Ciletti, Appellant, *v.* Washington.

Argued May 28, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Eugene C. Sloan*, with him *Wilbur F. Galbraith* and *Anthony L. Marino*, for appellant.

*Elder W. Marshall*, with him *Gilbert J. Helwig*, *Alexander R. Curran, William S. Yard, Ernest R. Von Starck, J. Wesley Oler, Barron P. McCune, Meyer Goldfarb, Reed, Smith, Shaw & McClay, Morgan, Lewis & Bockius* and *Bloom, Bloom & Yard*, for appellees.

OPINION PER CURIAM, March 17, 1958:.

These appeals are from the decree of the Court of Common Pleas of Washington County dismissing a complaint filed by plaintiff taxpayers who seek a declaration that various ordinances, and agreements entered into, in connection with the development of a municipal sewage disposal system are fraudulent, unlawful and void, and ask for the issuance of an injunction restraining the several defendants from billing or collecting charges for the operation of the sewage system.

In 1950 the City of Washington and the Borough of East Washington pursuant to the Municipal Authority Act of 1945[1] created the "Washington-East Washington Joint Authority" for the purpose of providing facilities for the treatment of sewage in those municipalities. The Authority is invested with extensive powers under the act, including the power of eminent domain. For the administration of the sewage system operations the Authority entered into a management contract with the Municipal Management Company, and for the billing and collecting of the sewer rentals it executed a service agreement with the Citizens Water Company of Washington. A finance agreement in the nature of a trust indenture was also entered into with the Mellon National Bank and Trust Company. The management and finance agreements were for terms of forty years and the contract for the calculation and collection of sewage charges was to operate for twenty years.

The complaint of the appellants, residents of the City of Washington and the Borough of East Washington, was filed on December 4, 1953, and on preliminary objections thereto it was dismissed by the lower court with limited leave to amend. On appeal to this

---

[1] Act of May 2, 1945, P. L. 382, as amended, 53 P.S. §§301-322.

Court, we granted the right to amend generally. 378 Pa. 641, 107 A. 2d 871 (1954). Subsequently, the plaintiffs filed an amended complaint, the defendants answered, and after a hearing the complaint was dismissed by the chancellor. From the dismissal by the court *en banc* of the plaintiffs' exceptions to the decree of the chancellor, the present appeals have been taken.[2]

It is unnecessary to discuss and decide each of appellants' numerous contentions because we are of the opinion that their action is barred by laches.

From the opinion of the court below we quote with approval: "On March 29, 1950, the City enacted its ordinance, indicating its intention and desire to organize the Authority. On April 3, 1950, the Borough passed a similar ordinance. On May 19, 1950, the Authority was chartered. On June 17, and June 25, 1953, the ordinances imposing the sewer rentals were passed. As the Chancellor pointed out in the adjudication, 'Each of these ordinances referred to the agreements between those municipalities and the Authority, the nature of the sewer project, the proposed conveyance of the municipalities' sewer systems to the Authority, and a statement as to how the sewer rentals were to be charged and collected.' Shortly thereafter, both of the ordinances were published. The present action was filed on December 4, 1953, more than 5 months after the publication dates of the ordinances last mentioned.

. . .

". . . On April 4, 1953, the advertisements for construction bids were published; on April 27, 1953, the bids were opened; on May 27, 1953, the Management and Service agreements were signed and the bond bid was accepted; on June 25, 1953, the City conveyed its

---

[2] The facts of this case are reported in greater detail at 378 Pa. 641, 107 A. 2d 871 (1954).

sewer system to the Authority; and on July 1, 1953, billing of the sewer rental charges was begun. Certainly on this last mentioned date, if not before, all the citizens of the City and Borough who were using the sewer system were put on notice of what had transpired. Yet, nothing was done for 5 months. In the meantime, the bonds were sold, the deeds were recorded, construction of the disposal plant was begun and payments on account of construction, amounting to some $200,000, were made. Clearly, to now overlook and excuse the plaintiffs' delay would prejudice the Authority, the bond holders, the Management Company, the Water Company, and the Trustee." On the authority of *Neizer v. Schuylkill Township School District*, 384 Pa. 323, 121 A. 2d 93 (1956) the determination of the court below must be affirmed.

No inference is to be drawn from our action in this matter that we approve the surrender of power and managerial control by the Authority through the device of long-term contracts. *Mitchell v. Chester Housing Authority*, 389 Pa. 314, 132 A. 2d 873 (1957).

Decree affirmed at the cost of the defendant Authority.

Mr. Justice MUSMANNO dissents.