Adrian Fedor *v.* The Borough of Dormont: William H. Moreland, Jr., Mayor; Thomas J. Torchia, Thomas V. McAllister, James W. Connor, Thomas R. Lloyd, Nicholas Masterson, Steve Pietrocatello and Billy Reiche, Members of Council, Appellants.

Submitted on briefs, October 31, 1977, to Judges WILKINSON, JR. and ROGERS, sitting as a panel of two. Reargued May 2, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT and DiSALLE.

450

*Phillip D. Paull*, for appellants.

*Ronald P. Koerner*, and *Gatz, Cohen, Segal & Koerner*, for appellees.

*Robert F. Meehan*, with him *Craig R. Burgraff*, Deputy Counsel, and *Lester Eisenstadt*, Deputy Auditor General and Chief Counsel, for amicus curiae, Department of Auditor General.

OPINION BY JUDGE ROGERS, July 7, 1978:

The Borough of Dormont (Borough) has appealed from an order of the Court of Common Pleas of Allegheny County requiring the Borough to purchase with funds of its Police Pension Plan a $5000 paid-up insurance policy on the life of Adrian Fedor, a retired police officer.

Mr. Fedor retired from the police force of the Borough of Dormont on February 28, 1974. He thereupon requested the Borough to purchase a $5000 paid-up insurance policy on his life as part of his pension benefits. The Borough refused the appellee's request on the basis of an opinion of the State Auditor General that the purchase of a single premium post-retirement life insurance policy from the Borough's Po-

lice Pension Fund was unauthorized by the governing legislation, the Act of May 29, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. §767 et seq. The appellee brought suit in mandamus against the Borough, the Mayor and members of Borough Council. After a trial before a judge without a jury final judgment was entered requiring the Borough to provide the insurance policy requested by purchase with "funds from the police pension fund." This appeal followed.

The Act of May 29, 1956 just cited requires certain muncipal subdivisions, including boroughs, to establish a police pension fund to be maintained by charges against members, appropriations by the municipalities and monies received from the State from taxes paid upon premiums by foreign casualty insurance companies. In compliance with the Act, the Borough of Dormont enacted its ordinance No. 949 in or about September of 1957. This ordinance created what it calls an Insured Police Pension Fund. The Fund provided for monthly retirement pension benefits for retired police officers and for the beneficiaries of officers dying before retirement. It contained no provision for death benefits, nor does it mention the appointment of any insurance company as carrier for the Fund.

On January 4, 1965 Borough Council adopted a resolution, a preamble of which expresses the Borough's desire to continue the Pacific Mutual Life Insurance Company as carrier and actuary "for the assured plan and its increased Death and Disability Benefits" and which records the Borough's desire "to ratify and confirm the authorized increase of the Death and Disability benefits in accordance with the recommendations of the Pacific Mutual Life Insurance Company." An operative section of the resolution provided: "Upon retirement the death benefit [otherwise $27,000] shall be reduced in amount to $5000 and

shall be kept in force by the Police Pension Fund so long as the retired policeman lives. After retirement the retired policeman cannot cash in the $5000 policy."

Next in the sequence of events was the retirement of a police officer in 1971 and the purchase by the Police Pension Fund in accordance with the amending resolution of January 4, 1965 of a $5000 paid-up insurance policy on the retired police officer's life. The Auditor General of Pennsylvania, as it was his duty to do by reason of the fact that most of the monies in local pension funds derives from the State's payment to the funds of taxes on premiums of foreign casualty insurance companies, audited Dormont Borough's police pension fund for the period December 1, 1970 to November 30, 1971 and found the expenditure of $5000 for the paid-up policy on the life of the retired officer just mentioned. By report dated May 7, 1973 the Auditor General commented that the expenditure of money by police pension funds for single premium post-retirement life insurance policies was not authorized by the Act of May 29, 1956, and recommended that the $5000 be refunded to the police pension fund. Attached to the report of audit was a letter from a Deputy Attorney General addressed to the Auditor General in response to questions concerning the Act of May 29, 1956, expressing the opinion that the Act contains no language susceptible of a construction which would authorize the payment of lump sum post-retirement death benefits. The Borough paid $5000 into the fund and on October 1, 1973, Borough Council adopted Ordinance No. 1183. The title and pertinent preambles to this Ordinance are as follows:

AN ORDINANCE AMENDING IN ITS ENTIRETY
ORDINANCE NO. 949 CITED AS THE INSURED
POLICE PENSION ORDINANCE OF DORMONT

. . . .

WHEREAS, the Borough of Dormont adopted its existing police pension plan by Ordinance No. 949 and subsequent amendments thereto, and

WHEREAS, the Borough of Dormont is desirous of amending and restating in its entirety the provisions of the police pension fund so that it shall be funded by monies deposited with a corporate Trustee, and

WHEREAS, the Borough of Dormont desires to enter into a pension trust agreement with Pittsburgh National Bank, under which the Bank will hold and administer sums and other property transferred to it under the Borough of Dormont police pension plan.

The Pension Plan adopted by Ordinance No. 1183 is a comprehensive and complete pension enactment in twelve Articles, from Definitions to Miscellaneous. It provides for the administration of the Plan by a committee appointed by Borough Council. It establishes standards for eligibility for retirement, and it provides for retirement pension benefits payable in monthly installments and for disability benefits also payable in monthly installments. Significantly, we believe, the Plan provides that contributions by members, the Borough and the State Treasurer shall be paid over to and managed by the Trustee under the Plan, that the funds held by the Trustee are held in irrevocable trust for the exclusive benefit of the participants and their beneficiaries and that "the monies transferred to the Trustee . . . and the earnings thereon shall be administered and invested solely under the terms and conditions of the Trust Agreement, and the Trustee shall not be liable nor required to take cognizance for or of the terms of the Plan but that it shall administer and invest the monies solely under the terms of the Trust Agreement." The Plan does

not provide for death benefits in the form of paid-up life insurance or by any other means.

We finally here record that Section 1 of the Act of May 29, 1956, 53 P.S. §767, as originally enacted read as follows:

Each borough, town and township of the Commonwealth maintaining a police force of eight or more members shall establish, by ordinance or resolution, a *police pension fund* or *pension annuity* to be maintained by a charge against each member of the police force, by annual appropriations made by the borough, town or township, by payments made by the State Treasurer to the municipal treasurer from the moneys received from taxes paid upon premiums by foreign-casualty insurance companies for purposes of pension retirement, for policemen and by gifts, grants, devises or bequeaths granted to the *pension fund* pursuant to section two of this act. Such fund shall be under the direction of the governing body of the borough, town or township, and applied under such regulations as such governing body may, by ordinance or resolution, prescribe for the benefit of such members of the police force as shall receive honorable discharge therefrom by reason of age and service. (Emphasis supplied.)

As last amended by the Act of June 23, 1970, P.L. 417, Section 1 reads:

Each borough, town and township of this Commonwealth maintaining a police force of three or more full-time members shall, and all other boroughs, towns or townships may, establish, by ordinance or resolution, a police *pension fund* or *pension annuity* to be maintained by a charge against each member of the

police force, by annual appropriations made by the borough, town or township, by payments made by the State Treasurer to the municipal treasurer from the moneys received from taxes paid upon premiums by foreign casualty insurance companies for purposes of *pension retirement for policemen,* and by gifts, grants, devises or bequests granted to the *pension fund* pursuant to section two of this act. Such fund shall be under the direction of the governing body of the borough, town or township, and applied under such regulations as such governing body, by ordinance or resolution, may prescribe for the benefit of such members of the police force as shall receive honorable discharge therefrom by reason of age and service, or disability, and may prescribe for the benefit (i) of widows, and if no widow survives or if she survives and subsequently dies or remarries, then (ii) of child or children under the age of eighteen years, of members of the police force or of members *retired on pension. All such pensions* as shall be allowed to those who are retired by reason of disabilities shall be in conformity with a uniform scale. The widow of a member of the police force or a member *who retires on pension* who dies or if no widow survives or if she survives and subsequently dies or remarries, then the child or children under the age of eighteen years of a member of the police force or a member *who retires on pension* who dies on or after the effective date of this amendment, may, during her lifetime or so long as she does not remarry in the case of a widow or until reaching the age of eighteen years in the case of a child or children, *be entitled to receive a pension* calculated at the rate of fifty per

centum of the *pension the member was receiving* or would have been receiving had he been retired at the time of his death. (Emphasis supplied.)

The Borough, and the Auditor General who has participated in this appeal as Amicus Curiae, urge that the use of monies of the Pension Plan for the purchase of a single premium post-retirement insurance policy on the life of a retired policeman is not authorized by the Act of May 29, 1956, but that the monies in pension funds established in accordance with that Act, deriving in large part from the State taxes, authorizes the use of the funds of such Plans only for the provision of pensions for eligible police officers and their beneficiaries. We agree. Nothing in Section 1 of the Act of May 29, 1956 as it was originally enacted or in its amended version after 1970, suggests that the funds may be used otherwise than for the provision of pensions or annuities. No benefit other than by means of pension is mentioned in either the original or the amended version of the Act. The word pension is defined by all dictionaries, and is commonly used, to mean a fixed sum paid regularly to a person. We are therefore constrained to agree with the Auditor General and the Deputy Attorney General who advised him, that the expenditure of monies of a police pension plan created under the Act of May 29, 1956 for the purchase of a single payment life insurance policy to provide a death benefit for a participant would be improper.

Some confusion throughout might have been created by the fact that Mr. Fedor brought suit only against the Borough, Mayor and members of Borough Council. He did not sue the Committee for the Plan or the Trustee. It is true, as Mr. Fedor contends, that boroughs have the power to insure their employes under policies of life insurance and to pay for said policies

from their treasuries. *See* Section 1202(37) of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §46202 (37). The question here, however, is not whether the Borough should be required to provide Mr. Fedor insurance pursuant to some action based on The Borough Code provision just cited but whether the Police Pension Fund created pursuant to the Act of May 29, 1956, which alone is referred to as establishing such an obligation, may be resorted to for its funding.

We also agree with the Borough and the Auditor General that Ordinance No. 1183 effectively repealed Ordinance 949 as amended by the resolution of January 4, 1965. Whereas the earlier enactments created an "Insured Police Pension Fund" to be used in the purchase of insurance annuity contracts and, by the amending resolution of January 4, 1965 for the purchase of death benefits, the new Plan adopted by Ordinance No. 1183 provides only for pensions. The new Plan is complete, comprehensive and requires that all monies provided for police pensions should be paid into the fund administered by the Trustee. While the Agreement of Trust is not in the record, we may not suppose that the Trustee is thereby empowered to pay benefits different from or additional to those provided by the Plan. Furthermore, as we have already noted, the title and the preamble to Ordinance No. 1183 express the Borough's intention of "amending in its entirety" and "amending and restating in its entirety" the Borough's existing Police Pension Fund provisions. By familiar axioms of statutory construction, the title and preamble of statutes may be considered in their construction (1 Pa. C.S. §1924), and a statute purporting to be a revision of all statutes on a subject or which sets up a general system covering the entire subject matter, or which is intended as a substitute for former statutes, must

458

be construed to repeal the old statutes on the same subject (1 Pa. C.S. §1971).

Finally, as we have noted, only the Borough, the mayor and members of council were sued. While the point has not been raised by the parties, a strong argument could be made that the Pittsburgh National Bank, as Trustee, was an indispensible party, since Ordinance No. 1183 gives the Trustee exclusive power over the assets of the Borough's police pension fund. This would be jurisdictional.

Judgment reversed.

ORDER

AND Now, this 7th day of July, 1978, the Judgment below entered November 4, 1976 is reversed.