629 A.2d 262

**STROUD TOWNSHIP, Appellant**

v.

**STROUD TOWNSHIP POLICE DEPARTMENT ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued April 1, 1993.

Decided July 20, 1993.

Jeffrey M. Zimskind, for appellant.

James McAneny, for appellees.

Before DOYLE and PALLADINO, JJ., and KELTON, Senior Judge.

DOYLE, Judge.

Stroud Township (Township) appeals an order of the Court of Common Pleas of Monroe County affirming an interest arbitration award under Act 111.[1]

The Stroud Township Police Association (Association) and the Township began negotiations on June 25, 1991 to replace their collective bargaining agreement which was due to expire on December 31, 1991. Impasse was reached and the Association requested binding arbitration by letter of September 6, 1991. Following a hearing before a panel of arbitrators, an award (Award) for the period January 1, 1992 through December 31, 1994 was issued on May 28, 1992. Article 14 of that Award provided:

*Pension*

In the third year of the Agreement the Township will recover and return 1991 pension contributions made by police officers, provided there is no direct cost to the Township and the Plan remains actuarily [sic] sound as required by statute.

The Township filed an appeal with the court of common pleas alleging that Article 14 of the Award was invalid because it exceeded the arbitrators' authority by requiring the Township to perform an illegal act. The court of common pleas

1. Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10.

rejected this challenge, confirmed the Award, and this appeal followed.

■ Our review of an Act 111 interest arbitration award is in the nature of narrow certiorari: the arbitration award may only be reviewed to determine whether (1) the arbitrators lacked jurisdiction to decide the issues in dispute, (2) the proceedings were conducted properly, (3) the arbitrators exceeded their authority or (4) the arbitrators have decided constitutional questions properly decided by a court. *Appeal of Upper Providence Township*, 514 Pa. 501, 526 A.2d 315 (1987).

On appeal to this Court, the Township makes the same contention as it did below, namely, that the Arbitration Panel exceeded its authority by directing the Township to refund, in 1994, pension contributions made by Township police officers in 1991. The Township argues that a municipality possesses only those powers specifically granted by the Legislature, and that the "Police Pension Fund Act" (Act 600,)[2] the statute which governs police pension funds, contains no explicit authority for the return of pension contributions. The syllogism concludes that if the Township has no authority to return payments once paid into the pension fund to police officers three years after they were made, then the arbitration panel, likewise, lacked such authority.

■ Because townships are created by the Commonwealth, a township has only those powers authorized by the Legislature. *Matter of Arbitration between Borough of Ambridge and the Police Department*, 53 Pa. Commonwealth Ct. 251, 417 A.2d 291 (1980). Thus, we must determine whether the Township is authorized to take such an action in order to determine whether the Award exceeds the authority of the arbitrators.

Based upon our decision in *Fedor v. Borough of Dormont*, 36 Pa. Commonwealth Ct. 449, 389 A.2d 217 (1978), *aff'd*, 487 Pa. 249, 409 A.2d 334 (1978), we conclude that the Township,

---

**2.** Act of May 29, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. §§ 767–78.

and thus the Arbitration Panel, does not have such authority. In *Fedor*, a retired police officer brought an action in mandamus against the Borough of Dormont seeking to compel the Borough to provide him with a paid-up life insurance policy as part of his pension benefits. The court of common pleas ordered the Borough to provide the policy and the Borough appealed.

We reviewed section 1 of Act 600, 53 P.S. § 767, which provides for the establishment of pension funds and noted that the clear purpose of the Act is to provide pensions for police officers. We thus concluded that:

> [n]othing in Section 1 of [Act 600] as it was originally enacted or in its amended version after 1970, suggests that the funds may be used otherwise than for the provision of pensions or annuities. No benefit other than by means of pension is mentioned in either the original or the amended version of [Act 600]. The word pension is defined by all dictionaries, and is commonly used, to mean a fixed sum paid regularly to a person. We are therefore constrained to agree ... that the expenditure of monies of a police pension plan created under [Act 600] for the purchase of a single payment life insurance policy to provide a death benefit for a participant would be improper.

*Fedor*, 36 Pa. Commonwealth Ct. at 456, 389 A.2d at 221.

 *Fedor* therefore stands for the principle that Act 600 pension funds may not be distributed to eligible officers except in the form of a pension or annuity. The payment contemplated by the arbitration Award in the instant case is essentially a one time payment and cannot conceivably be characterized as a pension or annuity payment and is thus not authorized by the statute.

Further evidence of the fact that the Legislature did not intend to allow a retroactive refund of contributions to those officers eligible to receive pension benefits is provided by Section 9 of Act 600, 53 P.S. § 775. Section 9 provides as follows:

> Any member of a police force ... who ... shall be ineligible to receive a pension after having contributed any charges to a police pension fund established pursuant to the provisions of this act ... shall be entitled to a refund of all such moneys paid by him into such funds plus all interest earned by such moneys while in the police pension fund as determined by regulations of the governing body immediately upon discontinuance of his employment with the police force. . . .

Thus, it is apparent that the Legislature knew how to provide for refunds when it intended to do so.

The Association, which admits that Act 600 contains no explicit statutory provision concerning the return of contributions to active members, attempts to avoid this fact by "recharacterizing" the nature of the payments mandated by the Award. The Association maintains that the "refund" authorized by the Award is not a refund at all but is instead a "retroactive elimination of previously made contributions which could have been eliminated in the year of collection" and that such retroactive action is permissible as long as it will not impair contractual or other vested rights. *Beharry, Washington County Reports, 1983–1985,* 116 Pa. Commonwealth Ct. 613, 544 A.2d 514 (1988), *aff'd,* 528 Pa. 29, 595 A.2d 15 (1991).

■ Section 6 of Act 600 provides as follows:

> If an actuarial study shows that the condition of the police pension fund of any borough, town or township is such that payments into the fund by members may be reduced below the minimum percentages hereinbefore prescribed, or eliminated, and that if such payments are reduced or eliminated contributions by the borough, town or township will not be required to keep the fund actuarially sound, the governing body of the borough, town or township may, on an annual basis, by ordinance or resolution, reduce or eliminate payments into the fund by members.

53 P.S. § 772. Thus, there is explicit statutory authority for the prospective reduction or elimination of contributions, and it is clear that an arbitration award ordering a *prospective*

elimination or reduction of pension contributions would not require the Township to perform an illegal act.

The fact remains, however, that here the 1991 pension contributions had already been made to the police pension fund by May of 1992, when the award was handed down. The money was already in the fund. Because the 1991 contributions are presently in the fund, under our interpretation of Act 600 in *Fedor*, those funds could not be paid from the fund except in the form of pension or annuity payments or as otherwise provided for in Act 600 (i.e. as refunds to ineligible officers).

While the result we reach today might appear to have the effect of requiring the excess resources of an overfunded pension plan to lie fallow, such is not the case. The statute itself provides several permissible outlets for the use of such funds. For example, pension benefits could be extended to widows and children of deceased police officers, 53 P.S. § 767, or used to expand pension benefits to retiring police officers. 53 P.S. § 769.

Accordingly, the order of the court of common pleas is reversed.[3]

## ORDER

NOW, July 20, 1993, the order of the Court of Common Pleas of Monroe County in the above-captioned matter is hereby reversed.

---

3. We also note that, even if we were to conclude that the Award was within the authority of the arbitrators, practical difficulties as to its application would still exist. For example the Award specifies that pension contributions made by police officers would be recovered in the third year of the agreement. No indication is given, however, as to which police officers would receive a refund (i.e. active officers in 1994, or former active officers in 1991, now retired).