## Knapp v. Miller

Before Smart, Aldisert and Brosky, JJ.

*Alvin D. Capozzi*, for plaintiffs.

*Charles D. Coll*, for defendants.

## Adjudication

ALDISERT, J., August 16, 1963.—We are asked to set aside a contract between the Borough of Verona and the Nautec Corporation covering the leasing and subsequent purchase of 177 new parking meters for a total cost of $11,588. Before the contract was negotiated the Borough of Verona did not advertise for bids. The Pennsylvania Borough Code requires that all contracts or purchases in excess of $1,000, except certain exempted situations, be made only after public bidding properly advertised. The officials of the Borough of Verona contend that the parking meter purchase was covered by one of the specific exemptions outlined in the borough code and therefore public bidding was not necessary.

Plaintiffs are taxpayers of the borough and are seeking relief from this court of equity to set aside the contract on the ground that it was not in conformance with the borough code.

An extremely narrow issue is therefore placed before us. We are to determine whether the purchase of certain manufactured parking meters on a contract in excess of $1,000 may be made without competitive bidding on the theory that parking meters are "particular types, models or pieces of new equipment, articles, apparatus, appliances, vehicles or parts thereof . . . desired by council, which are patented and manufactured or copyrighted products": Pennsylvania Borough Code, 53 PS §46316(d) (3), Act of May 4, 1927, P. L. 519, art. XIII.I sec. 1316, as amended. . . .

## Discussion

There being no controversy about the facts adduced by the pleadings and at the hearing, we are called upon to decide a very narrow, but gravely important, issue

of law. Unfortunately, the precise factual pattern has not been previously displayed before our courts, and it is possible that repercussions from this decision could find reverberations beyond the compact confines of the village of Verona.

Defendants are urging us to adopt a literal interpretation of this language of the borough code:

"The contracts or purchases made by council, involving an expenditure of over one thousand dollars, which shall not require advertising or bidding, as hereinbefore provided, are as follows:

". . . (3) Those where particular types, models or pieces of new equipment, articles, apparatus, appliances, vehicles or parts thereof are desired by council, which are patented and manufactured or copyrighted products": Act of May 4, 1927, P. L. 519, art. XIII.I, sec. 1316, as amended, 53 PS §46316.

Similar language is contained in the exception to bidding in the First Class Township Code, Act of June 24, 1931, P. L. 1206, art. XVIII, sec. 1802, as amended, 53 PS §56802, sec. d. (3); the Second Class Township Code, Act of May 1, 1933, P. L. 103, art. VIII, sec. 802, as amended, 53 PS §65802, sec. (c); and the Third Class City Code, Act of June 23, 1931, P. L. 932, art. XIX, secs. 1901, 1902, as amended, 53 PS §36901, sec. (3).

And we find virtually the same language in the County Code of August 9, 1955, P. L. 323, sec. 1802, as amended, 16 PS §1802, sec. (h) (3).

We are therefore conscious of a burdensome responsibility as we interpret this exemption clause of the Borough Code which finds verbal companionship in the codes governing other municipalities and all the 67 county governments in the Commonwealth.

At stake here, as we view it, is the entire concept of publicly advertised competitive bidding by Pennsylvania municipalities. To find in favor of defendants

before us and to accept their postulate, is to remove from the public arena of competitive bidding all contracts for any articles except raw materials.

A literal reading of this clause states that no competitive bidding is necessary for the purchase of any article which contains a *part* which has been patented and manufactured or copyrighted. It would tax a very fertile imagination, indeed, to conceive of any product manufactured today and used by a municipality which does not contain some part which is not illuminated by this broad descriptive spectrum.

Aware as we are of section 33 of art. III of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §533, that "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage;", we also are commanded that "The Legislature does not intend a result that is absurd, impossible of execution or unreasonable": Act of May 28, 1937, P. L. 1019, art. IV, sec. 52, 46 PS §552.

We will not conclude that the legislature meant that nonmanufactured products must be submitted to public bidding, and that manufactured products may be arbitrarily and summarily purchased by municipalities without the public and the taxpaying citizens thereof having the protection of publicly advertised public bidding.

The purpose of public bidding is to invite competition and to prevent favoritism.

"The object of requiring the city to advertise for proposals . . . is to secure competition and enable the city to purchase its supplies at the lowest market price": Silsby Mfg. Co. v. Allentown, 153 Pa. 319, 323.

The Silsby case announced the doctrine that where the class of articles or part could be purchased only from one supplier competitive bidding was not required.

The court declared, at page 324, that where, as in that case, the item was made ". . . only by the plaintiff. They could be bought nowhere else. Competition under such circumstances was impossible. *Ratio cessante cessit lex.* The law does not insist on what is impossible, or absolutely useless."

The philosophy underlying the concept of public bidding presupposes free and open competition among various manufacturers and suppliers of equipment, articles, apparatus, appliances, and vehicles when these words are used in a generic sense, i.e., pertaining to a genus or class of related things.

It is only when there is no competition, and where there is in fact a monopoly in the manufacture of the *genus or class* of item that the public shield of competitive bidding may be lowered. The safeguard of competitive bidding may be dispensed with only when there is proof positive of the absolute futility of seeking bids.

Thus, this clause calling for exemption from public bidding is operable only when the article sought is of a genus or class of items manufactured by only one supplier.

In addition to the basic logic of this interpretation of the exemption clause, the intention of the legislature is further revealed in companion sections to the bidding provisions of the Borough, First Class Township, Second Class Township and County Codes,[1] which provide for surcharges against councilmen and commissioners who order services and personal properties piecemeal in order to obviate the minimum $1,000 requirement for competitive bidding. We cannot believe that the legislature would have inserted such stringent provisions if the entire concept of competitive bidding applied only to nonmanufactured articles and items.

---

[1] 53 PS §46316.1; 53 PS §56803; 53 PS §65802.1; 53 PS §36902; and 16 PS §1803.

Accordingly we hold that the "patented and manufactured or copyrighted" exemption to the public bidding requirement applies only when the type or class of article sought by the municipality is manufactured only by one manufacturer under patent or copyright protection, and where there is absolutely no competitor manufacturing the same type or class of article.

The record before us reveals that there are several manufacturers of parking meters. There is not a monopoly in the manufacture of this type or generic class. It is true that each meter has individual features, and perhaps the features of the Duncan Parking Meter are desired by Verona Borough Council. But if specific features of one item in a class of articles appeal to a municipality, then it is for the municipality to spell out those features in the specifications for the public bidding.

The concept of competitive bidding permits a borough council to insist upon peculiar features of a given article. These specifications may be as detailed and as intricate as imaginative councilmanic draftsmen devise, and it may be that as a result of complicated specification drafting, the generic class of article becomes compressed into a specific item which, from a practical standpoint, is manufactured by one company only.

But as we view the statute, the determination of whether, under these circumstances, an article is manufactured by only one company must be made only by the medium of public competitive bidding. The law does not give council the right and privilege of determining in advance, without giving the public an opportunity to respond to the offering, that there is in fact a monopoly in the creation of a specific item which is part of a generic class of articles.

It was not intended to vest members of council with a toga of economic soothsaying, nor to equip these mu-

nicipal officials with omniscience in the market place. They are not presumed to know the fabricating capabilities of the ever-expanding American industrial potential, nor are they cataloguers of the myriad products descending upon every commercial distribution center from manufacturing plants throughout the world.

For an excellent presentation for the necessity of public bidding see Chrostwaite's Pennsylvania Borough Law. (1951 ed.) pp. 608-09, wherein he concludes:

"Another recent application in the purchase of patented and manufactured articles is in the installation of parking meters. There seems to be no good reason why there should not be some competition. No company can survive which has not had successful experience. Particular devices may be appealing and councils should be given a certain amount of discretion in determining the mechanism most suitable to the local needs. However, there can arise an abuse of discretion, a submission to highpowered salesmanship, to entertainment or to other influences."

Mr. Chrostwaite as well as this court is aware of the case of Duncan Meter Corporation v. Gritsavage, 361 Pa. 607, 65 A 2d 402, where Mr. Justice Drew, by way of obiter dictim, made a statement at page 611 with which we are in complete disagreement:

"The parking meters here involved are a particular type of patented and manufactured article, and consequently the statute (competitive bidding) was not applicable."

We recognize that the same parking meter as in the instant case was before the Supreme Court in Duncan. However, that court had before it the interpretation of the duties of a City Controller *after council had in fact ordered competitive bidding on the*

*meters, and bidding had taken place, and Duncan had become the successful, albeit sole, bidder.*

Inasmuch as the precise issue before us was not present before the Supreme Court and the single sentence was, as stated before, obiter dictum, we do not construe this as ruling case law.

It is incomprehensible that the highest tribunal in our Commonwealth by the interposition of one sentence of 21 words intended to remove the public protective shield of competitive bidding from all manufactured articles purchased by a municipality, and by every county government in the Commonwealth, and hold that the language of the statute requiring competitive bidding only applied to purchases of sand, gravel, lumber and other raw, nonmanufactured materials.

## Conclusions of Law

1. This court has jurisdiction over the parties and the subject matter.

2. All municipal contracts of the Borough of Verona in excess of $1,000 are regulated by the provisions of the Borough Code, 53 PS §46316, et seq.

3. The contract between the Borough of Verona and Nautec Corporation dated June 28, 1962, covering leasing and eventual purchase by the borough of 177 parking meters for a total cost of $11,588 was not entered into in accordance with the provisions of the Borough Code in that the contract was not awarded after public competitive bidding.

4. The contract between the Borough of Verona and Nautec Corporation is invalid, null and void.

## Decree Nisi

And now, August 16, 1963, it is ordered, adjudged and decreed that the contract between the Borough of Verona and Nautec Corporation dated June 28, 1962, is invalid, null and void, and that the Borough of Verona and/or Harold Miller, Mayor, Maurice Quinlan,

Treasurer, and Philip Ciarelli, Secretary, of said borough, are herewith permanently enjoined from making any further payments to Nautec Corporation under terms thereof.

### Opinion sur Exceptions

ALDISERT, J., December 20, 1963.—Before the court is a consideration of exceptions filed by defendants to the chancellor's findings of fact, conclusions of law, and the decree nisi. The essence of the conglomeration of exceptions was distilled by the time of oral argument, and summarized in the defendants' brief as follows:

I. Were the DeLuxe Model "60" parking meters patented and manufactured articles which were exempt from the requirements of advertising and competitive bidding, in the award of municipal contracts?

II. Were the plaintiffs guilty of laches?

The chancellor answered both questions in the negative.

The chancellor devoted over six pages of his adjudication to a discussion of defendants' first point. We find that this was a proper statement of the law and agree with the reasoning and conclusions of the chancellor.

Accordingly, we hold that the DeLuxe Model "60" parking meters contract entered into between Verona Borough and Nautec Corporation in the amount of $11,588 was not exempt from the requirements of advertising and competitive bidding.

The question of laches is addressed to the discretion of the trial court: Potter Title and Trust, Admr. v. Frank, 298 Pa. 137.

In determining the application of laches, inquiry must be made whether the complainants' delay was unreasonable and whether defendants were prejudiced by such delay: 1 P. L. Encyc. 186.

Defendants rely on Ciletti v. Washington, 392 Pa. 204, 140 A. 2d 98, where it was held that the doctrine was properly invoked. There an ordinance to create a sewage disposal authority was passed by the City of Washington on March 29, 1950, and the Borough of East Washington on April 3rd. On April 14, 1953, advertisements for construction bids were published. Bids were opened April 27, 1953, followed by management and service contracts. On June 25, 1953, there was a conveyance to the authority of the municipal sewer system and on July 1, 1953, billing of the sewer rental charges was begun.

The complaint was filed December 4, 1953, and the court held plaintiff was barred by laches.

Verona borough emphasizes that only five months intervened between the date of the first billing for sewer rentals and the filing of the Ciletti suit. We do not construe that case as emphasizing this particular five-month period. Because Ciletti was attacking ordinances passed three years before the filing of the law suit, with the municipalities and private institutions changing basic economic positions involving sale of bonds, recording of deeds, commencement of construction, and payment of $200,000 on the various contracts before the institution of the law suit, it is obvious that defendants were seriously prejudiced by the delay.

In the Verona situation there is not one iota of prejudice attaching to defendants. The effect of the present action in equity which declares the parking meter contract null, void, and of no effect, places defendants in the identical position they occupied prior to the parking meter contract. No obligation, financial or otherwise, may attach to the municipality by reason of entering into this contract.

The Nautec Corporation not being a party to these proceedings, we need not describe the effect of our ruling upon it, other than to suggest that it obviously

should have been aware of the spirit and purpose of the competitive bidding statute for municipalities in this Commonwealth, such governmental agencies being its major, if not sole customers.

There being no prejudice to defendants, we accordingly hold the defense of laches is not available to them in these proceedings.

In the case before us, the motion to purchase the meters without first submitting the matter to competitive public bidding was passed by council June 12, 1962. The ordinance effectuating council's decision was ordained and enacted January 8, 1963. This bill in equity was filed May 15, 1963. This was not such an unexcusable delay as to prejudice defendants.

Subsequent to the hearing the parties hereto have entered into the following stipulated finding of fact which, with a slight modification, we hereby substitute for our previous finding of fact no. 8:

"8. Certain component parts of the DeLuxe Model "60" parking meters of the Nautec Corporation sold to the Borough of Verona are patented articles. Nautec Corporation is the owner of the latest patents covering these component parts. Its "patented sealed collection system" is a component part of the DeLuxe Model "60" parking meter manufactured by Nautec Corporation under letters patent owned by Nautec Corporation and, under the testimony produced before the Chancellor, is not available in the other parking meter proposals presented to Verona Council."

The exceptions will be dismissed and a final decree entered.

### Final Decree

And now, December 20, 1963, it is ordered that defendants' exceptions to the chancellor's adjudication be and they are hereby dismissed: and

It is ordered, adjudged and decreed that the contract between the Borough of Verona and Nautec Corpora-

tion dated June 28, 1962, is invalid, null and void, and that the Borough of Verona and/or Harold Miller, Mayor, Maurice Quinlan, Treasurer, and Philip Ciarelli, Secretary, of said borough, are herewith permanently enjoined from making any further payments to Nautec Corporation under terms thereof.