544 A.2d 514

In Re: 1983 Audit Report of Patricia A. Beharry, Controller.

In Re: 1984 Audit Report of Patricia A. Beharry, Controller.

In Re: 1985 Washington County Annual Financial Report Surcharge. Patricia A. Beharry, Controller of Washington County, Pennsylvania, Appellant.

In Re: 1985 Washington County Annual Financial Report Surcharge. Frank R. Mascara, Metro Petrosky, Jr., and Edward M. Pauluso, individually and as Commissioner of Washington County, Pennsylvania, Appellants.

Argued December 16, 1987, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Christine A. Ward,* with her, *Robert F. Wagner, Dickie, McCamey & Chilcote, P.C.,* for appellant, Patricia A. Beharry, Controller of Washington County.

*Melvin B. Bassi,* County Solicitor, with him, *Katherine B. Emery,* Assistant County Solicitor, for appellants, Washington County Commissioners.

*Anthony J. Seneca, Seneca & O'Dell, P.C.,* for appellee, James A. Fazzoni, Sheriff of Washington County.

OPINION BY JUDGE DOYLE, June 8, 1988:

### INTRODUCTION

Before us for our consideration are cross appeals from an order of the Court of Common Pleas of Washington County[1] which, upon consideration of post-trial motions reaffirmed its prior order in part and modified it in part. The case began when the commissioners of Washington County (County) and the sheriff were assessed certain surcharges by the County controller. The propriety of those surcharges, which pertained to 1983, 1984 and 1985 Annual Financial Reports of the County, were appealed to the common pleas court which dismissed all but one of the surcharges against the commissioners and dismissed certain, but not all, of the surcharges against the sheriff. Upon consideration of post-trial motions, the court reaffirmed its determination with respect to the commissioners, but further reduced the surcharges against the sheriff. Cross-appeals to this Court ensued.

A multitude of issues is raised for our consideration here. We shall attempt to organize these matters by examining first the controller's appeal from the dismissal of various surcharges against the commissioners, second the controller's appeal of the dismissal of certain surcharges against the sheriff (who did not cross-appeal on the surcharges which were sustained) and third the commissioners' appeal from the imposition of a

---

[1] The Honorable ALBERT E. ACKER was specifically designated by the State Supreme Court to hear and decide this case which he did in an exhaustive opinion which is 184 pages in length and in a subsequent opinion on post trial motions which is 53 pages in length. This yeoman's service of making factual findings and conducting legal research, as well as the helpful organization of the issues in this massive litigation, was of inestimable assistance to this Court.

$203,659.90 surcharge against them which surcharge pertained to a contract for certain telephone services and equipment with AT&T Information System (AT&T).

## PRETRIAL DETERMINATION ON CONSTITUTIONALITY OF BONDING PROVISION

Before reaching the substantive merits generally, however, there is a threshold issue of a procedural nature which confronts us. After the imposition of the various surcharges by the controller, the commissioners and the sheriff appealed. By pretrial order, the lower court ruled that the requirement of posting a bond in double the amount of the surcharges mandated by what was then Section 1731 of The County Code (Code), Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. §1731, violated due process and was, hence, unconstitutional. Section 1731 has since been amended to eliminate the bonding requirement and said amendment is designated by the legislature to be retroactive to January 1, 1978. *See* Section 1 of the Act of December 17, 1986, P.L. 1683. We are asked to decide whether the trial court properly held the double bonding requirement to be unconstitutional. The commissioners argue that even if the statute were constitutional, the 1986 retroactive amendment has operated to moot the issue. Section 1731 at the time of this litigation provided as follows:

Appeals from [Controller's or Auditor's] Reports
An appeal may be taken from such reports to the court of common pleas, either by the Commonwealth, the county or the officer. Such appeal may also be taken by ten or more taxpayers in behalf of the county, in the manner and subject to the restrictions provided by article twenty-eight of this act.
Such appeal shall be entered by the Commonwealth within four months, and by the county

and the officer within sixty days after the filing of the report. *If the officer is the appellant, he shall enter into a recognizance with two sufficient sureties in double the sum found due by such report, with condition to prosecute the appeal with effect and to pay the costs and such sum of money as shall appear on the final determination of the appeal to be due from him.* (Emphasis added.)

Section 1731 was amended as of December 17, 1986. The amendment deleted the sentence emphasized in the above quotation and replaced it with the following language:

Upon appeal to the court of common pleas, the controller or auditors shall be required to establish the validity of the surcharge and shall establish the loss sustained to the county. If the surcharge is upheld on appeal to the court of common pleas, the officer so surcharged shall immediately pay the costs and money due to the county.

Pursuant to Section 2 of the 1986 amendment, the legislature provided "this act shall be retroactive to January 1, 1978."

It is, of course, well settled that there is a presumption against a statute having a retroactive effect and that such construction will not be embraced unless it is clearly and manifestly intended by the legislature. *See* Section 1926 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1926. Further, retroactive laws will be supported only when they do not impair contractual or other vested rights but operate merely to vary the remedy or cure defects in proceedings which are otherwise fair. *Costa v. Lair,* 241 Pa. Superior Ct. 517, 363 A.2d 1313 (1976). In the instant case, the legislature has

clearly manifested its intent that the 1986 amendment be retroactive. Further, the *elimination* of the prehearing bonding requirement does not *deprive* anyone of a vested right; to the contrary, it *protects* the vested property right of those surcharged. We, thus, view the amendment as one which cured a procedural due process problem and, hence, one which falls within the restrictive category of statutes whose retroactive application is permissible. Having determined that retroactivity operates to bar imposition of the bonding provision as of January 1, 1978, we conclude that the question of whether former Section 1731 was constitutionally infirm is now moot.

## THE CONTROLLER'S AUTHORITY TO SURCHARGE

Furthermore, before discussing the substance of the various surcharges which were dismissed by the trial court, we must consider the overriding question of whether the controller has the authority to impose a surcharge if she has not first refused to pay the expenditure which is the subject of the surcharge. At issue here is the interrelationship between two provisions of the Code. Section 1730 of the Code, 16 P.S. §1730, which pertains to the controller's post-audit duty to file reports and her authority to impose surcharges, provides as follows:

**Filing reports**

(a)  The reports of the controller or auditors shall be filed among the records of the court of common pleas of the county.

(b)  The amount of any balance or shortage, or of any expenditure of a kind, or made in a manner, prohibited or not authorized by statute, which causes a financial loss to the county shall be a surcharge against any officer against whom such balance or shortage shall appear, or who by

> vote, act or neglect, has permitted or approved such expenditure, but no elected or appointed official of a county shall be surcharged for any act, error or omission in excess of the actual financial loss sustained by the county, and any surcharge shall take into consideration as its basis the results of such act, error or omission and the results had the procedure been strictly according to law. The provisions hereof limiting the amount of any surcharge shall not apply to cases involving fraud or collusion on the part of officers, nor to any penalty enuring to the benefit or payable to the Commonwealth.

The above-quoted language constituted an amendment to Section 1730. This amendment, like the amendment to Section 1731 which we discussed above, was enacted on December 17, 1986, and was also given retroactive effect back to January 1, 1978. The prior version of Section 1730 provided as follows:

> **Filing Reports**
>
> The reports of the controller or auditors shall be filed among the records of the court of common pleas of the county, and from the time of such filing shall have the effect of a judgment against the real estate of the officer who shall thereby appear to be indebted either to the Commonwealth or to the county.

Unlike the prior issue, the parties do not dispute, for purposes of this issue, the retroactive effect of the amendment. Thus, our discussion will focus upon Section 1730 as amended in 1986. It should be noted, however, that *only* with respect to the pre-judgment provision appearing in prior Section 1730, and the constitutional challenge raised to that provision, do the commissioners attack the constitutionality of that provision on the merits. *See* discussion *infra*.

Section 1752 of the Code, 16 P.S. §1752, which pertains to pre-audit functions of the controller, is the statute whose interrelationship with Section 1730 we must consider. Section 1752 provides as follows:

**Claims not approved by controller**

If the controller does not approve a claim, bill or demand presented to him, he shall within thirty days forward it to the county commissioners together with his notice that he has refused to approve the same and his reasons therefor. The county commissioners shall consider the claim, bill or demand and, if they consider that it should be paid by the county, they shall so notify the controller. If the controller thereafter continues to refuse his approval no payment shall be made thereon by the county except pursuant to an order of court upon a proper issue thereto directing the controller to approve payment.

The question which we must decide, is in instances where the controller has actual or implied knowledge that the propriety of a claim is questionable, is the controller's disapproval of the claim under Section 1752 a necessary prerequisite to the imposition of a surcharge under Section 1730. The trial court answered this question in the affirmative. It based its determination upon the rationale that Section 1752 provides for early judicial intervention into disputes between the controller and the commissioners and thus avoids the necessity for surcharges long after county funds have been erroneously expended. We agree with this observation. Additionally, we believe that early discovery of misspent funds, whether the spending was done innocently or not, helps protect the public treasury. The trial court further suggested that surcharges should be reserved for situations involving personal gain, favoritism, finan-

cial loss to the county or other instances where a claim's irregularity would not have come to the controller's attention when presented. We agree with this reasoning and would also add that this interpretation has the laudable effect of putting county officials on early notice that their claims or record keeping procedures are questionable or wanting. Additionally, this interpretation forecloses the possibility that a controller could avoid giving notice when it is apparent that claims are questionable, thus allowing unacceptable claims or practices to accrue and then later surcharging county officials for greater sums as a retaliatory tactic.

It is clear from various Code provisions that the controller has an ongoing duty to conduct pre-audits (*see, e.g.,* Section 1751 of the Code, 16 P.S. §1751 (establishing a voucher check system)), and we believe that in instances where the controller has actual or implied knowledge that a claim is questionable, requiring the controller to provide notice pursuant to Section 1752 before permitting her to impose surcharges is consistent with her duties found elsewhere in the Code.

The controller argues that because Section 1730 authorizes a surcharge for "any" unauthorized expenditure and because Section 1730 does not expressly reference Section 1752, her authority to impose surcharges is not limited to instances where a prior refusal to pay has been issued. She views the Section 1752 procedure as an "extraordinary mechanism" which would engender the litigation of small disputes and delay payments to county vendors. She asserts that such a result would be detrimental to the taxpayers.

Although these arguments are not without appeal, we believe that the controller's concerns do not mitigate against the minimal level of protection we feel should be afforded to county officials and the advantage to the public of early discovery of questionable expenditures.

There are instances where quick judicial intervention is desirable even if the amount in dispute be small. If questionable disputes are not immediately rectified, the risk to county officials by way of later surcharges is great. Further, because the controller has the authority to subpoena documents, *see* Section 1725 of the Code, 16 P.S. §1725, she should, in many instances, with minimal investigation, be able to verify the propriety of various claims on her own.

We note that the controller views the trial court holding as precluding a surcharge where a prior refusal to pay was not issued. This was not the trial court's holding,[2] nor is it ours. We hold only that where the controller, via her pre-audit duties, has *actual or implied notice* of the dubiousness of a claim, a refusal to pay is a prerequisite. Thus, in instances where an impropriety is not apparent by routine auditing or where fraud is involved, surcharging is permitted despite the fact that no prior refusal to pay was issued.[3] Having determined that the trial court correctly concluded that the controller must issue a prior refusal to pay in most situations before she can issue a surcharge, we must now determine whether the three surcharges which

---

[2] The trial court's exact holding was that "in situations where the Controller knew or, upon reasonable investigation, . . . should have known that a claim presented for her approval or disapproval . . . was a claim not authorized by law, not undertaken according to law, not approved according to law, or was a subject of fraud, flagrant abuse of public office, or any criminal act or neglect . . . ; or was a claim upon supplies or services which have not been furnished or performed, or was a claim arising from self-dealing or evasion . . . , the Controller was required to disapprove the claim and follow the procedures of Section 1752." (Citations omitted.) Tr. Ct. Op. p. 14.

[3] The Controller claims that she was unable to conduct thorough pre-audits because of understaffing. This argument is irrelevant.

were dismissed on this basis fall within the category of those for which knowledge could not be imputed to the controller.

## THE CONTROLLER'S APPEALS

### A. The Felice, R.B.A. and Bedway Surcharges

The surcharges dismissed on the basis of the controller's failure to issue a prior refusal to pay pertain to a contract with Felice Associates, (Felice) a professional consulting firm, two contracts with R.B.A. Professional Data Systems, Inc., (RBA) a data processing concern, and one contract with Bedway Security Agency (Bedway). Only the last of these three is specifically asserted by the controller to be an improper claim for which she could not have been charged with actual or implied notice of any impropriety. Thus, we uphold the dismissal of the R.B.A. and Felice surcharges without further discussion. With respect to the Bedway charge, the controller argues in her brief that the trial court concluded that she could not reasonably have known that payment was improper, but nonetheless dismissed her surcharge on the basis that she had not issued a prior refusal to pay. Contrary to her assertion, however, the trial court found just the opposite when it determined that the controller was in possession of agreements entered into between the county and Bedway and concluded that she was thus required to issue the refusal to pay. Tr. ct. op. pp. 129-30. The substantiality of the evidence to support this finding is not challenged and, hence, it must stand. Accordingly, we conclude that the trial court properly dismissed the surcharges pertaining to the Felice, R.B.A. and Bedway contracts.

### B. The Sams Surcharge

The next issue we must consider is whether the trial court properly dismissed the surcharge imposed against

the commissioners for failure to solicit competitive bids for contracts for standardized testing services for job applicants in the Job Training Partnership Act program. Section 1802 of the Code, 16 P.S. §1802, provides in pertinent part:

> (a) All contracts for services and personal property where the amount thereof exceeds the sum of four thousand dollars ($4,000), shall be written and shall, except as otherwise hereinafter specified, be made by advertising for bids.
>
> . . . .
>
> (h) The contracts or purchases made by the commissioners involving an expenditure of over four thousand dollars ($4,000) which shall not require advertising or bidding, as hereinbefore provided, are as follows:
>
> . . . .
>
> (5) Those involving services of members of the medical or legal profession, registered architects, engineers, certified public accountants *or other personal services involving professional expert advice.* (Emphasis added.)

Sams Associates (Sams) is a company which provides job testing. The trial court found as fact that Sams' employees are college graduates with expertise in testing and counseling; that the services rendered by Sams require special skill, training, knowledge and judgment; and that Sams gathered extensive information on each participant in the program and prepared a profile of each individual utilizing its information to secure appropriate training and employment for each participant.

We must decide whether these findings support the conclusion that Sams supplied professional expert advice within the intendment of Section 1802 of the Code. The testimony of Ms. Linda Bell, B.S., M.A., the planning manager of the Washington-Greene County Job

Training Agency, supports the above-described findings. Accordingly, we focus upon the legal conclusions derived from those findings. We have previously held that the services of a pharmacist are of such expertise as to excuse competitive bidding requirements. *Beharry v. Mascara*, 101 Pa. Commonwealth Ct. 582, 516 A.2d 872 (1986). More recently, in *Doverspike v. Black*, 535 A.2d 1217 (1988), we concluded that the appraisal services of individuals who are not licensed real estate brokers nonetheless constituted professional services under Section 1802. We expressly declined in *Doverspike* to hold that post-baccalaureate studies, state certification or licensure are necessary prerequisites for one to render professional expert advice under Section 1802(h)(5). We focused instead upon the expertise the particular profession in question entails. We believe that the facts of this case warrant the conclusion that Sams provided professional expert advice and, hence, uphold the trial court's dismissal of the surcharge.

## C.  Aptech Surcharge

The surcharge here pertains to a contract entered into by the commissioners for the monitoring of telephone lines within the County. The trial court found that Aptech Computer Systems Inc. (Aptech) would monitor the lines and then submit a report on numbers and types of calls, and the level of traffic on various trunks. Said monitoring resulted in an ability to identify personal and long distance calls and abuses in the system as well as to break down lump sum telephone bills. The trial court specifically found that the collection and processing of the data by Aptech, which used its own hardware and software, and the preparation of a written activities report (which did not include recommendations) constituted a service involving "special technolo-

gy, skill and training and unique expertise." Therefore, the trial court concluded that the Aptech contract was exempt from the bidding requirement in Section 1802 of the Code.

Although it is admittedly a close question, we believe that the trial court's conclusion was correct. We are persuaded by the trial court's observation that one definition of advice is "information or notice given." *See Webster's New Collegiate Dictionary* 17 (1973). Therefore, we conclude that despite the absence of recommendations or judgments in Aptech's reports, its services could, nonetheless, be the type falling within the exception appearing in Section 1802(h)(5) of the Code.[4]

### D.  Alampi Surcharge

This surcharge pertains to the failure of the commissioners to see that the Office of Employment Security (OES) was provided with relevant information relating to a claim for unemployment compensation benefits filed by Angela Alampi, a county employee, and the failure to appeal from the OES determination to grant Ms. Alampi benefits. Ms. Alampi had been suspended from her position with the County allegedly for theft of County property. She applied for benefits. Margaret K. Pennline, Personnel Director, did not inform the OES that Alampi's suspension was for alleged criminal activi-

---

[4] We take a moment to observe that the trial court in analyzing the Aptech surcharge concluded that the controller's failure to issue a refusal to pay would not have itself precluded a surcharge because under the facts here the controller could not have originally known that sums over $4,000 would be involved in this contract. In its opinion on exceptions, however, the trial court stated that the controller's failure to issue the refusal to pay *was* one basis by which it could dismiss the surcharge. This was obviously error, but, because of the disposition of this issue on the public bidding question, we need not concern ourselves with this inconsistency.

ties, and when benefits were granted Ms. Pennline did not appeal from the determination.

The trial court determined that Pennline's failure to inform the OES of the circumstances surrounding the suspension action constituted neglect of a positive duty, but reasoned that the commissioners could not be surcharged for this because in Pennsylvania a public officer is not liable for the neglect of his subordinates unless he ordered the negligent act to be done (citing *Commonwealth to the use of Orris v. Roberts*, 392 Pa. 572, 141 A.2d 393 (1958)). There appears to be no dispute that the commissioners did not order Pennline to withhold information from the OES. The controller asserts, however, that the commissioners should be surcharged because they failed to instruct Ms. Pennline adequately. *Orris* teaches that public officers are not responsible for the neglect of subordinates, if the subordinates are of suitable skill and ability, unless the public officers cooperate in or authorize the wrong. The rationale for this rule is to avoid imposing extreme liability upon public officers many of whom have modest salaries. *Id.* The controller asserts that Pennline was not sufficiently skilled. Ms. Pennline's skill is a question of fact. The trial court heard the testimony, noted that Ms. Pennline had a B.A. degree and eight years experience as a personnel director and was "impressed with her abilities." Accordingly, we conclude that the controller's surcharge cannot stand on the theory that the commissioners employed an inept personnel director inasmuch as the trial court found to the contrary.

In a related contention the controller argues that the commissioners were properly surcharged because they failed to appeal the adverse unemployment compensation determination. The trial court found, however, that Ms. Pennline alone made that determination and while it concluded that *she* had abused her discretion in de-

ciding not to appeal, it reasoned that because she alone had made the determination the commissioners could not be surcharged. We agree. *Orris*. Accordingly, we uphold the dismissal of this surcharge.

## SURCHARGES AGAINST THE SHERIFF

The controller assessed certain surcharges against the sheriff for 1983. These surcharges all pertain to items originally paid for out of the sheriff's petty cash fund for which the sheriff sought reimbursement. The trial court found that the 1983 audit of the petty cash fund was timely made and that no surcharge had been imposed in connection with it.[5] In 1985 certain alleged deficiencies with respect to the fund for 1983 were first discovered. The controller attempted to surcharge the sheriff in the context of her annual 1984 report for the 1983 improprieties. The trial court determined that the only reason advanced for the late discovery of the questionable payments was the salary board's refusal to supply the controller with an auditor. It concluded, however, and quite properly in our view, that such action could not be attributed to the sheriff. The trial court also found that payments submitted by the sheriff were not "unusually deceptive" and would have been found had an audit been performed.

Section 1731 of the Code, 16 P.S. §1731, provides that an appeal by the county or an officer of the county from a controller's report must be made within sixty days of the filing of the report. The trial court determined that the controller's attempt to surcharge the sheriff in the 1984 report for expenditures authorized in the 1983 report filed on April 19, 1984 was the equiva-

---

[5] The controller did not appeal this point in her post-trial motions. It is, however, briefed and argued by both parties here. Hence, we will, in the exercise of our discretion, consider it.

lent of a nunc pro tunc appeal by her and held that such procedure was forbidden by Section 1731 of the Code. Of course, an appeal nunc pro tunc is permitted where there is actual fraud or concealment akin to fraud. *Unangst's Appeal*, 333 Pa. 489, 5 A.2d 201 (1939). The elements of fraud are (1) a false representation which, if innocently made, must be material, and if knowingly made need not be material, (2) scienter, (3) justifiable reliance upon the misrepresentation, and (4) damages to the one relying. *Mancini v. Morrow*, 312 Pa. Superior Ct. 192, 458 A.2d 580 (1983). The party alleging fraud bears the burden of proving it. *Carlson v. Sherwood*, 416 Pa. 286, 206 A.2d 19 (1965).

Here the trial court found that while there were two instances where "alleged fraud could be found as such" because those two instances would have been apparent in the course of a routine audit, the controller had not met her burden to show justifiable reliance. Such conclusion is necessarily premised upon factual findings which we cannot disturb. Accordingly, we uphold the determination that the attempt to surcharge for 1983 expenditures in the annual 1984 report was time barred.

There were other surcharges imposed against the sheriff in the annual 1984 report. Many were dismissed by the trial court on the basis of the controller's failure to issue a prior refusal to pay. The controller does not argue that the problems with the various expenses were not readily ascertainable, but argues only that she had insufficient assistance in her office so as to permit her to discover the various improprieties. That fact, however, as earlier noted, has nothing to do with the sheriff and cannot be a basis for sustaining the surcharges where there has been no prior refusal to pay. Accordingly, we uphold the trial court's determination to dismiss these surcharges on the basis of our earlier discussion of the need for a prior refusal to pay.

Certain other surcharges were imposed by the controller because of the sheriff's failure to supply her with the documentation she demanded. Some of these surcharges were also dismissed by the trial court because it found the *viva voce* testimony of the sheriff to be credible and sufficient as a matter of law to explain the expenditures. The controller asserts that it is *she* who must weigh the evidence and determine credibility, not the trial court. Further, she contends that the caselaw has also required written documentation of expenditures. First, while it is the controller's right to demand and examine documents, where such documentation is either lacking or insufficient, her remedy is to surcharge, which she did. The matter then goes to the common pleas court and it is at *this level* that a due process hearing is first conducted. Thus, it must be the trial court which determines credibility and the sufficiency of the evidence. To say that the controller's initial decision on these matters is unassailable is to permit a litigant to function as an adjudicator; due process will not tolerate such a result.

As for the cases which the controller relies upon for the proposition that documentation must be written, those cases refer to expenses falling under specific statutes which require itemized documentation, or to situations where lump sum expenditures were presented for payment. We can find no statute requiring itemized documentation for the expenses at issue here, *e.g.*, car washes or meals for guards while guarding prisoners on trial. We, thus, hold that the trial court properly exercised its role in determining credibility and sufficiency of the evidence.

## THE COMMISSIONERS' CROSS APPEAL

The commissioners' cross appeal from that portion of the trial court's order which sustained a surcharge of

$203,659.90 imposed upon them for the purchase, without public bidding, of a telecommunication system from AT&T. The purchase was made in the wake of the breakup of AT&T.

Before the trial court, the commissioners asserted several reasons why this surcharge should be dismissed. They argued that the system fell within three of the exceptions to public bidding appearing in Section 1802 of the Code, *i.e.,* the patented products exception under Section 1802(h)(3), the Public Utility Commission tariffs exception under Section 1802(h)(4) and the professional services contract exception in Section 1802(h)(5). Only the first of these is raised in the commissioners' brief and hence has been raised on appeal to this Court. *See generally* Pa. R.A.P. 2116.

We agree with the trial court that the patent exception is inapplicable here. That statute excepts from public bidding those contracts whose "particular types, models or pieces of new equipment, articles, apparatus, appliances, vehicles or parts thereof, are desired by the commissioners, which are patented and manufactured or copyrighted products." The trial court in holding this exception inapplicable relied upon *Knapp v. Miller,* 34 Pa. D. & C. 2d 380 (1963), *aff'd per curiam,* 415 Pa. 577, 204 A.2d 250 (1964). The court in *Knapp* considered a provision virtually identical to Section 1802(h)(3), and held:

> The philosophy underlying the concept of public bidding presupposes free and open competition among various manufacturers and suppliers of equipment, articles, apparatus, appliances, and vehicles when these words are used in a generic sense, i.e., pertaining to a genus or class of related things.
>
> It is only when there is no competition, and where there is in fact a monopoly in the manu-

facture of the *genus or class* of item that the public shield of competitive bidding may be lowered. The safeguard of competitive bidding may be dispensed with only when there is proof positive of the absolute futility of seeking bids.

Thus, this clause calling for exemption from public bidding is operable only when the article sought is of a genus or class of items manufactured by only one supplier.

In addition to the basic logic of this interpretation of the exemption clause, the intention of the legislature is further revealed in companion sections to the bidding provisions of the Borough, First Class Township, Second Class Township and County Codes, which provide for surcharges against councilmen and commissioners who order services and personal properties piecemeal in order to obviate the minimum $1,000 requirement for competitive bidding. We cannot believe that the legislature would have inserted such stringent provisions if the entire concept of competitive bidding applied only to nonmanufactured articles and items.

Accordingly we hold that the 'patented and manufactured or copyrighted' exemption to the public bidding requirement applies only when the type or class of article sought by the municipality is manufactured only by one manufacturer under patent or copyright protection, and where there is absolutely no competitor manufacturing the same type or class of article. (Emphasis in original.) (Citation omitted.)

*Id.* at 384-85. We agree with this logic. Further, as was stated in *Coleman v. Stevenson,* 72 Pa. D. & C. 2d 499, 503 (1974), "[t]he critical inquiry in determining the applicablility of subsection (h)(3) . . . is . . . whether

the product is so patented as to eliminate competition in its manufacture and thus render advertising for bids futile." The trial court found credible the testimony of several witnesses who opined that comparable systems were available. Thus, this is not an item which was "so patented" as to eliminate competitive bidding. Accordingly, we conclude that the trial court properly determined that the public bidding exception in Section 1802(h)(3) was inapplicable to the AT&T contract.

The commissioners raise several other arguments for our consideration. They contend that Section 1730 as it existed before the 1986 amendment is violative of due process in that it permits a judgment to be entered prior to a hearing. They further argue that Section 1731 is violative of equal protection since, unlike similar provisions appearing in other municipal statutes, it does not limit liability to actual loss incurred.[6] Alternatively, they contend that the 1986 amendment to Section 1731 is applicable to this case and operates to limit damages to actual loss incurred and, additionally, operates to place the burden on the controller to prove the amount of actual loss. The commissioners also argue that under principles of unjust enrichment and quantum meruit any surcharge must be limited to the actual loss incurred by the County.

We begin by recognizing the difficulties the retroactive amendments have injected into this case. The amendment to Section 1731 in particular has operated to change the burden of proof[7] and alter the degree of

---

[6] The due process and equal protection arguments were not raised until the filing of post-trial motions. Although the trial court found them untimely it proceeded to decide the merits of those claims and, consequently, we feel bound to do so as well.

[7] Formerly the party appealing the surcharge bore the burden. *See, e.g., Davis v. Carbon County,* 369 Pa. 322, 85 A.2d 862 (1952). The retroactive amendment to Section 1731, however, clear-

liability. It is for this second reason that we believe that the 1986 amendment cannot apply retroactively *insofar as it operates to restrict the citizens' right to recovery.* It is clear, as noted earlier, that retroactivity is disfavored and will not be countenanced where substantive rights are altered. By permitting retroactive application of the provision of Section 1731, which restricts the commissioners' liability to actual loss incurred by the county, the substantive rights of the citizens to recover damages are severely curtailed. Thus, we hold that the provision in Section 1731 which seeks to limit liability cannot be given retroactive effect.

We believe, however, that the commissioners' alternative theory, that Section 1731, prior to the 1986 amendment, was violative of equal protection has merit. As is aptly pointed out by the commissioners, similar provisions governing other municipal officials do limit liability to actual loss.[8]

We have no compunction in holding that the statute in question must be tested under the rational relations standard inasmuch as the commissioners are not a suspect classification. *See Irby v. Sullivan,* 737 F.2d 1418, 1422 (5th Cir. 1984); *Pennsylvania Liquor Control Board v. Spa Athletic Club,* 506 Pa. 364, 485 A.2d 732 (1984). The inquiry then is whether there is a rational relationship between the statutory classification (here commissioners, as opposed to other municipal officials)

---

ly places the burden on the controller to establish both the validity of the surcharge and the loss sustained.

[8] *See, e.g.,* Section 1041 of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §46041; Section 1003 of The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §56003; Section 545 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §65545; Section 608 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §6-608.

and the legitimate public purpose of the statute. *Spa Athletic.* And, although in establishing categories the legislature need not establish "perfect" classifications, *Vance v. Bradley,* 440 U.S. 93 (1979), some rational basis for the disparate classifications must be evident. The trial court held that the fact that the commissioners are paid a full salary and the fact that the controller performs audits are rational bases justifying a different classification for them. Certainly other public officials are subject to audits. As for the salary requirement, even assuming that only commissioners are paid a full salary, in light of the amounts of money that can be the subject of surcharges, we do not believe that a full salary alone constitutes a basis for disparate treatment of county officials. In this litigation alone the initial surcharges were well over two million dollars. We fail to see how the commissioners' salaries alone would justify imposing liability beyond actual loss for such enormous sums unless fraud was found.[9] The only distinction between the commissioners and borough, township or school officials which we can think of as a basis for different treatment is the greater sums of money for which the former are accountable. But, inasmuch as the legislature never provided (prior to the advent of Home Rule) for officials of cities of the First and Second Class to be subject to surcharge, we do not believe any distinction based upon sums of money managed is justified here.

In an argument related to the equal protection argument, the commissioners contend that Section 1730, as it existed prior to the 1986 amendment violated due process because it provided for a judgment to be entered against the officer from the time the report was

---

[9] Although the controller alleges that "constructive fraud" or "gross neglect" exists in this case the trial court did not so find. Thus, we reject this argument.

filed with the common pleas court. The trial court reasoned that, while under Section 1730 the commissioners are subject to judgment, that judgment will not become final unless the commissioners do not appeal or the common pleas court affirms the surcharge. It concluded that since there is no execution of judgment before the commissioners are afforded an opportunity to be heard, the statute is, from a due process standpoint, constitutionally sound. It is, of course, well settled that due process guarantees only a hearing at some meaningful time. *Mitchell v. W. T. Grant Co.*, 416 U.S. 600 (1974). To determine whether the facts of this case warrant a due process hearing before the initial judgment we must apply the tripartite test enunciated by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The *Mathews* Court stated:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest, through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 334-35.

The trial court in considering the first prong of *Mathews* properly recognized that the commissioners can avoid deprivation of their property by appealing the surcharge. As to the second prong, the trial court observed that the controller has already performed an audit and the risk of error in that audit is counterbal-

anced by the absolute right of appeal prior to execution of judgment pursuant to Section 1736 of the Code, 16 P.S. §1736.[10] In assessing the third *Mathews* prong the trial court recognized the importance of protecting the County's fiscal resources by guaranteeing that property is available. The trial court also reasoned that because the United States Supreme Court upheld the imposition of tax liens without a prior hearing (citing *Sager v. Burgess*, 411 U.S. 941 (1973)) (summarily affirming 350 F. Supp. 1310 (E.D. Pa. 1972)) a similar result would be constitutionally permissible here. We agree.

Having concluded that Section 1730 is sound from a due process standpoint, but that Section 1731 cannot withstand an equal protection challenge, the question remains as to what remedy is required. While we are loath to become involved in judicial legislating we must consider the effect of holding Section 1731, as it existed prior to 1986 unconstitutional, on its face. Does that mean the commissioners cannot challenge the surcharge? Such result would be intolerable. Does it mean no surcharge could be imposed under any circumstances? That result is equally unpalatable. We believe that the most sensible result is to permit the surcharge, but only to the extent of actual loss. This result has the effect of interpreting this statute in a manner consistent with other statutes pertaining to other types of municipal officials and of permitting both sides to defend their positions. Thus, both the public's and the commissioners' interests are protected. But, because the question of actual loss had not been directly in issue at the hearing, *see* footnote 6, no findings were made on this issue.

---

[10] Section 1736 was repealed by Section 20002(a) of the Judiciary Act Repealer Act, 42 Pa. C. S. §20002(a) [1310], insofar as it directed appeals to the Superior Court.

Accordingly, we must remand this case for the taking of additional evidence and the making of additional findings on the extent of actual loss, if any, incurred by the County because of its entering into the AT&T contract. Further, we make it clear that the burden shall be upon the controller. This is because under the 1986 retroactive amendment to Section 1731 such burden is placed upon her and retroactive application of this portion of Section 1731 is permitted because it affects only procedural and not substantive rights.[11]

Based upon the foregoing discussion, the trial court's order is affirmed in part and vacated in part and remanded for additional evidence and findings.

## ORDER

Now, June 8, 1988, the order of the Court of Common Pleas is affirmed insofar as it dismissed the surcharges against the commissioners with the exception of the AT&T surcharge. That portion of the order pertaining to the AT&T surcharge is vacated and this case is remanded for the taking of additional evidence and additional factfinding on the limited question of the amount of actual loss, if any, incurred by the County because of the purchase of the AT&T system.

It is further ordered that the imposition of the surcharges against the sheriff as amended by the trial court in its consideration of the post-trial motions is affirmed.

Jurisdiction relinquished.

---

[11] We reject the commissioner's argument that principles of unjust enrichment and quantum meruit are applicable to this case because we do not believe those principles apply where statutory standards for recovery are set by the legislature.

CONCURRING AND DISSENTING OPINION BY JUDGE COLINS:

I dissent from the conclusions reached by the majority in the matters referred to as the "Sams Surcharge" and the "Aptech Surcharge" in its opinion. My reasons are those stated in the dissenting opinion in *Doverspike v. Black,* 535 A.2d 1217, 1221 (1988). I reiterate my view that the class of contracts, colloquially referred to as "pinstripe patronage," should be subject to the competitive bidding requirements of The County Code.

I concur with the result and reasoning of the majority in the remainder of the opinion.

Judge BARRY joins.