601 A.2d 1223

**In re 1985 WASHINGTON COUNTY ANNUAL FINANCIAL REPORT SURCHARGE.**

**Appeal of Frank R. MASCARA, Metro Petrosky, Jr., and Edward M. Paluso, individually and as Commissioners of Washington County, Pennsylvania.**

Supreme Court of Pennsylvania.

Submitted Sept. 24, 1990.

Decided Jan. 14, 1992.

Melvin B. Bassi, County Sol., Charleroi, Katherine B. Emery, Asst. County Sol., Washington, for appellants.

Robert F. Wagner, Dickie, McCamey & Chilcote, P.C., Pittsburgh, for Patricia Beharry.

John Soloman, Washington, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

This is an appeal by Frank R. Mascara, Metro Petrosky, Jr. and Edward M. Paluso, Commissioners of Washington County, from the Commonwealth Court's order dated June 5, 1988 116 Pa.Cmwlth. 613, 544 A.2d 514 relating to the surcharge imposed by the County Controller in the 1985

Washington County Annual Financial Report Surcharge.[1] The Commonwealth Court vacated the trial court's decision to sustain the surcharge for the purchase of a telecommunication system from AT & T, and remanded the matter to the trial court for the determination of the amount of the actual loss, if any, resulting from the purchase. We granted allocatur and now affirm.

The Commissioners were surcharged for the years 1983, 1984, and 1985 for expenditures made pursuant to contracts entered into on behalf of the county with suppliers and consultants. The surcharges were consolidated for a non-jury trial before President Judge Albert E. Acker, who was specially designated by this Court to hear the matter. All but one of the surcharges against the Commissioners were dismissed. President Judge Acker entered judgment against the Commissioners in the amount of $203,658.90, an amount representing principal and interest for the purchase of the AT & T system.

The comprehensive findings of fact made by the trial judge established that prior to the divestiture of AT & T by federal court order of January, 1984, Washington County had its phone system under lease with Bell of Pennsylvania. Representatives of AT & T contacted Louis Lignelli, the County's Director of Administration, to discuss the purchase of the leased telephone system and the acquisition of a replacement system known as AT & T System 75. System 75 is an integrated business information management system employing digital switching and computer controls with a wide range of features that enhance operations efficiency.

Mr. Lignelli testified that he concluded there was a need for an integrated management informations system in the County, including capabilities for word processing and data management. The expert witnesses who testified at trial

1. Surcharges arising out of a 1983 and 1984 audit report involving the same parties were recently addressed by this Court in *In re: 1983 and 1984 Audit Report of Paul Belcastro, Controller,* 528 Pa. 29, 595 A.2d 15 (1991).

generally agreed that System 75 was an excellent system. The County's older system did not have the capabilities of the digital system.

Several proposals were submitted by AT & T, including a proposal for the purchase of existing equipment and one for the purchase of existing equipment with an upgrade of additional equipment for the Domestic Relations Department. A third proposal provided for the installation of System 75, termination charges resulting from early termination of the telephone lease agreements, and relocation of the existing system to a County home facility. The third proposal was accepted with modifications.

Mr. Lignelli testified that he did not contact competitors although he was aware that other companies could supply similar services and equipment. The purchase of System 75 was recommended by Mr. Lignelli because of County personnel's familiarity with the equipment, as well as the existence of AT & T developmental laboratories for new products and its arrangements to have an AT & T representative on the premises. He expressed a concern for disruption in services if the contract was given to another company.

An additional consideration involved the termination charges under the existing contract. The third proposal by AT & T included termination charges of $55,225.90. The purchase eventually made by the County was for 349 existing telephones at a price of $73,536.00 which included the termination of the previous lease agreement, 65 new telephones plus installation at $31,392.00, and the purchase of the System 75 plus wiring at $94,412.00, for a total purchase price of $199,140.

The County Commissioners did not participate in the negotiation of the agreement. Mr. Lignelli informed them of the progress of the negotiations as they occurred. No written contract was prepared or signed by the County Commissioners concerning the purchase from which the Controller could determine what was purchased by the County prior to the receipt of invoices from AT & T.

A four-page Service Purchase Agreement dated February 3, 1984 was introduced into evidence. The agreement was signed by Francis L. King, Director of Property and Supplies. The items of equipment or services that were purchased were not specified.

The agreement was not executed by the County Commissioners. No formal action was taken until a meeting of the Commissioners on November 15, 1984 at which they unanimously agreed to purchase the existing telephone system and new, unspecified equipment. Invoices were sent to the County during the period from October 18, 1984 through July 18, 1985 that were signed by individual commissioners. AT & T sent invoices to Washington County for payment on July 26, July 30, and August 2, 1985 that were not signed by the Commissioners. The invoices were questioned by the County Controller, who asked the County Commissioners to explain why the purchase was not bid.

On November 4, 1985, AT & T brought an action against the County based upon the Service Purchase Agreement. The County admitted entering into the agreement, alleging that the invoices had been approved by the Commissioners but that the Controller had refused to make the payments. Judgment was entered against the County on November 8, 1985 in the amount of $199,141.40. The Controller's petition to intervene in the action was denied by Judge Rodgers of the Washington County Court of Common Pleas. The County Controller subsequently filed a surcharge for the purchase in the 1985 Washington County Annual Financial Report in the amount of $200,810.74.

Before the trial court, the Commissioners argued that the surcharge should be dismissed because the purchase was exempt from the public bidding requirements. Pursuant to 16 P.S. § 1802(a), all contracts for services and personal property in an amount exceeding $4,000.00 must be made by advertising for bids unless specifically exempted. The Commissioners sought to establish that the purchase fell within the exceptions for patented and manufactured or copyrighted products, for contracts made for public utility

service under tariffs filed with the Pennsylvania Public Utility Commission, and for contracts involving personal or professional services, 16 P.S. § 1802(h)(3), (4), and (5) respectively. The trial court determined that the exceptions were inapplicable to the purchase of the AT & T System.

The trial court sustained the surcharge. Post-trial motions were filed by the Commissioners. On consideration of the post-trial motions, the trial court reaffirmed its determination of the AT & T system surcharge.

Subsequent to the trial court's entry of the order sustaining the surcharge, but prior to disposition of the post-trial motions, the Legislature enacted amendments to Sections 1730 and 1731 of the County Code. The amendments limited the amount of a surcharge to actual financial loss absent fraud or collusion. The amendments were enacted on December 17, 1986, but were made retroactive to January, 1978.

In their post-trial motion, the Commissioners requested that the surcharge be dismissed or, alternatively, be limited to the actual financial loss sustained by the County. In disposing of the post-trial motions, the trial court acknowledged the passage of the amendments to the surcharge provisions but did not address their application to this case. The trial court noted only that the amendments might have a substantial effect on the outcome of the surcharges.

The Commissioners appealed from the imposition of the surcharge. On appeal, the Commonwealth Court vacated the portion of the trial court's order relating to the AT & T surcharge and remanded the case for a determination of the actual loss, if any, incurred by the County because of the AT & T purchase. The Commonwealth Court rejected the Commissioner's argument that the patent exception to the bidding requirements was applicable. The brief of the Commissioners filed before the Commonwealth Court did not raise the other two exceptions discussed by the trial court and were not addressed on appeal for that reason.

The Commonwealth Court held that the December 17, 1986 amendment to 16 P.S. § 1731 limiting liability could not be given retroactive effect because it operated to restrict the citizens' right to recover damages. The Commissioners asserted that, prior to its amendment, 16 P.S. § 1731 was violative of the Equal Protection clause because similar surcharge provisions governing other municipal officials limited liability to actual loss. Noting that the equal protection argument had not been raised by the Commissioners until the filing of post-trial motions and that the trial court had found it untimely, the Commonwealth Court addressed the argument because the trial court had done so. The Commonwealth Court accepted the argument and remanded the matter for that reason.

 The Commissioners assert that the Commonwealth Court erred in finding that the purchase of the AT & T system did not fall within the patent exception to the bidding requirements. In concluding that the public bidding exception in 16 P.S. § 1802(h)(3) was inapplicable to the AT & T contract, the Commonwealth Court focused its inquiry on whether the product was so patented as to eliminate competition in its manufacture and to render public bidding futile. Noting that the trial court had found the testimony of witnesses indicating that comparable systems were available to be credible, the Commonwealth Court found that the AT & T system was not an item that was so patented as to eliminate competitive bidding.

Section 1802(h)(3) provides an exception from the bidding requirements for purchases "where particular types, models or pieces of new equipment, articles, apparatus, appliances, vehicles or parts thereof, ... which are patented and manufactured or copyrighted products." In holding that this exception was inapplicable, the lower courts cited extensively from the decision in *Knapp v. Miller*, 34 Pa.D. & C.2d 380 (1963), *aff'd per curiam*, 415 Pa. 575, 204 A.2d 250 (1964), which construed identical language contained in the Borough Code provision, 53 P.S. § 46 316. The court had held that,

The philosophy underlying the concept of public bidding presupposes free and open competition among various manufacturers and suppliers of equipment, articles, apparatus, appliances, and vehicles when these words are used in a generic sense, i.e., pertaining to a genus or class of related things.

It is only when there is no competition and where there is in fact a monopoly in the manufacture of the *genus or class* of item that the public shield of competitive bidding may be lowered. The safeguard of competitive bidding may be dispensed with only when there is proof positive of the absolute futility of seeking bids.

Thus, this clause calling for exemption from public bidding is operable only when the article sought is of a genus or class of items manufactured by only one supplier.

*Knapp,* 34 Pa.D. & C.2d at 384 (Emphasis supplied.)

We agree with this reasoning. The public bidding requirements encourage competition for municipal contracts and purchases. The requirements are intended to prevent fraud, eliminate bias and favoritism, and to secure a financial advantage through the bidding process. No purpose is served by imposing public bidding requirements upon the purchase of patented and manufactured or copyrighted products. The record in this case clearly demonstrates, however, that the AT & T system did not fall within this exception.

The public bidding requirements were applicable to the purchase of the AT & T system. The issue then is whether the 1986 amendments limiting surcharges to the actual financial loss sustained by the county are applicable to this case. We hold that the amendments, made retroactive by the Legislature to January 1, 1978, must be applied to the surcharge for the AT & T system.

The amendments to 16 Pa.S. §§ 1730, 1731 provide:

## § 1730. Filing Reports

(a) The reports of the controller or auditors shall be filed among the records of the court of common pleas of the county.

(b) The amount of any balance or shortage, or of any expenditure of a kind, or made in a manner, prohibited or not authorized by statute, which causes a financial loss to the county shall be a surcharge against any officer against whom such balance or shortage shall appear, or who by vote, act or neglect, has permitted or approved such expenditure, *but no elected or appointed official of a county shall be surcharged for any act, error or omission in excess of the actual financial loss sustained by the county,* and any surcharge shall take into consideration as its basis the results of such act, error or omission and the results had the procedure been strictly according to law. The provisions hereof limiting the amount of any surcharge shall not apply to cases involving fraud or collusion on the part of officers, nor to any penalty enuring to the benefit or payable to the Commonwealth.

## § 1731. Appeals from reports

An appeal may be taken from such reports to the court of common pleas, either by the Commonwealth, the county or the officer. Such appeal may also be taken by ten or more taxpayers in behalf of the county, in the manner and subject to the restrictions provided by article twenty-eight of this act.

Such appeal shall be entered by the Commonwealth within four months, and by the county and the officer within sixty days after the filing of the report. Upon appeal to the court of common pleas, the controller or auditors shall be required to establish the validity of the surcharge and shall establish the loss sustained to the county. If the surcharge is upheld on appeal to the court of common pleas, the officer so surcharged shall immediately pay the costs and money due to the county.

Prior to the enactment of the amendments, a surcharge was properly imposed upon a county official for any pay-

ment made in violation of the bidding requirements. A surcharge could be imposed without any evidence that the surcharged official sought personal gain, demonstrated favoritism, or acted intentionally to avoid the bidding requirements. Officials acting on advice of legal counsel or with a good faith belief that the bidding requirements did not apply to the transaction in question were subject to surcharges. *Loushay Appeal*, 370 Pa. 453, 88 A.2d 793 (1952); *Likovich Appeal*, 347 Pa. 40, 31 A.2d 543 (1943). We acknowledged that surcharges could be imposed in cases that would result in a gross injustice, but recognized that the statute could not be rewritten judicially. *See, e.g. Patterson v. County of Delaware*, 404 Pa. 5, 171 A.2d 47 (1961).

The amendments were expressly made retroactive to January 1, 1978. No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature. 1 Pa.C.S. § 1926. *See also, Smith v. Fenner*, 399 Pa. 633, 161 A.2d 150 (1960); *Commonwealth ex rel. Greenawalt v. Greenawalt*, 347 Pa. 510, 32 A.2d 757 (1943); *In re Waits Estate*, 336 Pa. 151, 7 A.2d 329 (1939). The Controller argues that the amendments do not apply to the surcharge herein because the rights of the taxpayers and the obligation of the Commissioner would be disturbed. The Commonwealth Court construed the amendments as altering the degree of liability and refused to apply the amendments retroactively.

The enactment of the amendments ameliorates the harsh effect of the surcharge by limiting it to the actual loss sustained by the county. As before, it does not permit defenses based on a lack of favoritism or personal gain, a good faith belief that the bidding requirements did not apply, or advice of counsel. The liability imposed under the amendments is unchanged. It is only the damages that may be recovered that has changed.[2]

2. The provisions limiting the amount of any surcharge are inapplicable to cases involving fraud or collusion on the part of officers, and to penalties payable to the Commonwealth 16 P.S. § 1730.

The limitation on the damages recoverable in the surcharge action does not impair a vested right of the county or its citizens, but only varies the remedy. The retroactive amendments are applicable to the surcharge imposed in this case. For this reason, we need not address the Commissioners' arguments based upon an equal protection claim, unjust enrichment, and quantum meruit.

■ We must determine next whether the matter should be remanded for the taking of additional evidence as to the actual loss, if any, incurred by the County from the purchase of the AT & T system.[3] At trial, testimony was given by Mr. Lignelli that the purchase of the system was a sound financial decision in view of his concern that service continue without interruption and the termination liability provision of the existing contract. Thomas Hessler, a witness for the Controller, testified that it was his belief that the AT & T system was not the lowest priced, best system on the market at that time.

No evidence was introduced, however, as to actual loss because the County Controller was not required to establish financial loss prior to the retroactive amendments. The trial court concluded that under the prior statute, testimony concerning whether the County benefited from the purchase or whether the purchase was a bargain was irrelevant because a loss was presumed where the bidding provisions are not followed. Although the testimony of Mr. Lignelli amply supports the County Commissioners' position that no financial loss was sustained by the County, the change in the law resulting from the retroactive amendments requires us to provide the parties with the opportunity to submit evidence in support of their respective positions.

3. We find that the County Controller's argument that the retroactive amendments should not be applied because the evidence demonstrates constructive fraud to be totally without merit. The evidence simply does not lend itself to that characterization. Accordingly, we will not address the question of whether a showing of constructive fraud would be sufficient to warrant imposition of damages in the entire amount of the contract.

Based upon the foregoing, we affirm the Commonwealth Court's order vacating the AT & T surcharge and remanding the matter for the taking of additional evidence on the limited question of the amount of actual loss, if any, incurred by the County because of the purchase of the AT & T system.

LARSEN, J., did not participate in the consideration or decision of this case.